IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY KAY BLAIR,

        Plaintiff,

v.                                      Case No. 14-2002-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits and supplemental security income. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines

whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his previous work. The claimant is determined not to be disabled unless he shows he cannot perform his previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Nielson,* 992 F.2d at 1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

## II. Procedural History

Plaintiff, born in 1969, claimed disability beginning in August of 2010 as a result of peripheral diabetic neuropathy, meralgia paresthetica, diabetes, bi-polar disorder, kidney disease, and high blood pressure. The ALJ found that although Plaintiff had some severe impairments, she could still

perform a limited range of light work, so was not disabled. Plaintiff does not challenge the ALJ's findings at steps one and two, but contends that the ALJ erred in finding that Plaintiff failed to meet a listing at step three, in assessing her credibility, in stating an RFC that failed to account for all of her limitations, and in relying on the vocational expert's response to a hypothetical question.

## III. Analysis

### Step Three

The ALJ determined that Plaintiff had the following severe impairments: diabetic neuropathy, degenerative joint disease knees, obesity, hypertension, and chronic kidney disease stage III-IV. But he found that these impairments did not meet or medically equal a listing found at 20 C.F.R. part 404, subpart P, appendix 1. Tr. 15-16. Those listings describe physical and mental impairments that are so severe that they are *per se* disabling. 20 C.F.R. § 404.1525(a). Plaintiff has the burden to prove that she met or medically equaled a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5. (1987); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Plaintiff first contends that the ALJ erred because he did not consider listing 11.14, concerning peripheral neuropathies. To meet this listing, a claimant must have peripheral neuropathies with "disorganization of motor function ... in spite of prescribed treatment." 20 CFR part 404, subpart P,

appendix 1, § 11.14. Disorganization of motor function must result in "sustained disturbance of gross and dexterous movements, or gait and station." *Id.* at § 11.04(B).

The ALJ did not specifically address listing 11.14, yet his subsequent findings make clear that he would not have found Plaintiff to have met that listing. "[A]n ALJ's findings at other steps of the sequential [evaluation] process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The ALJ found that Plaintiff retained the ability to walk for three hours in an eight-hour workday. Tr. 16. He also found that Plaintiff had normal gait and stance, could heel-to-toe walk with slight difficultly, had normal gross and fine motor ability, and did not require an assistive device. S*ee* Tr. 18. Those findings are supported by the record and are inconsistent with the requisite "sustained disturbance" of movements or gait and station.

Other records support the ALJ's conclusion. Plaintiff admitted that she could walk for 20 minutes at a time with a shopping cart (a non-prescribed device). Medical records alternately describe Plaintiff's gait as slow and cautious or as normal and comfortable. Tr. 327, 433. Plaintiff had normal gross motor movements despite some difficulty walking on her heels and toes, *id*; and Plaintiff did not use an assistive device, Tr. 225, 286, 433. Thus, Plaintiff has not shown that her disorganization of motor function or

5

her interference with locomotion is severe enough to enable her to meet either listing 11.14 or 1.02B. That same evidence refutes Plaintiff's assertion that a combination of impairments medically equals one of those listings. Plaintiff points to medical reports of reduced sensation in her soles and ankles, knee pain, and foot pain and numbness. Yet Plaintiff does not show that any sensory abnormality was so severe as to meet or equal a listing.

Plaintiff also faults the ALJ for not addressing how her obesity impacted medical equivalency. But Plaintiff fails to show evidence that her obesity had any impact on medical equivalency. The court will not make assumptions about the severity or functional effects of obesity combined with other impairments. *See* SSR 02-1p, 2000 WL 628049 at *6 ("Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment."); *Callicoatt v. Astrue*, 296 F.App'x 700, 702 (10th Cir. 2008) (rejecting claim where no evidence of record showed that her obesity exacerbated her other impairments). "Without some evidence that her obesity was relevant to her other impairments during the relevant time frame, the ALJ is not required to consider plaintiff's obesity." *Aldrich v. Colvin*, 2013 WL 4768065, 5 (D.Kan. 2013). In these circumstances, any error is harmless. *See Callicoatt*, at *2.

Plaintiff further contends that the ALJ should have obtained a medical opinion on medical equivalence. Although the legal question of medical

equivalence must be supported by the opinion of a medical expert, that requirement is satisfied, *inter alia,* by the signature of an agency medical or psychological consultant on one of the forms typically used by the Commissioner to assess disability at the initial stages of the administrative process. *See* Social Security Ruling 96–6p, 1996 WL 374180 at *3 (SSA July 2, 1996). The record in this case contains such forms. *See* Disability Determination and Transmittal forms, Exh. 1A and 2A, pp.58-59 (referencing form 4734 dated 4/22/11 signed by Joyce Goldsmith, M.D., pp. 397-402) 4A, 5A (dated July 11, 2011, signed by David Bullock, D.O. pp, 62-63). Thus the record contains medical expert opinions that Plaintiff's impairment or impairments failed to meet or medically equal an impairment in the Listings. See *Carbajal v. Astrue,* 2011 WL 2600984 at *2 (D.Colo. June 29, 2011). These opinions were substantial evidence upon which the ALJ was entitled to rely. *See Flaherty v. Astrue,* 515 F.3d 1067, 1071 (10th Cir. 2007).

Plaintiff contends that there is no evidence that the state agency reviewing physicians had seen Dr. Allen's November 4, 2010 medical findings and that Dr. Allen's findings should have been treated as additional medical evidence, requiring the ALJ to get an updated medical opinion. But Plaintiff has not shown that Dr. Allen's findings were not reviewed by the state agency reviewing physicians, whose review was later in time. Nor has Plaintiff shown that Dr. Allen's findings were sufficient to have made a

difference in the determination whether Plaintiff's impairment or impairments met or medically equaled an impairment in the Listings. Plaintiff has not shown any relevant medical or other significantly probative evidence that the ALJ ignored in making his step three finding. See *Barnett v. Apfel*, 213 F.3d 687, 689 (10th Cir. 2000). *Compare Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

### RFC

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work. Specifically, he found that she could do the following:

> [O]ccasionally lift 20 pounds and frequently lift 10 pounds. The claimant can sit for up to six hours, and stand or walk for approximately 3 hours in an 8-hour day with normal breaks. She can occasionally climb ramps or stairs. However, she can never climb ladders, ropes or scaffolds. In addition, the claimant can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, heat and wetness.

Tr. 16. Plaintiff contends that the ALJ improperly found that her testimony was not credible, and that the RFC unreasonably omitted vision limitations.

### Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Nevertheless, an ALJ's adverse credibility finding "should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). The ALJ articulated the reasons why he discredited Plaintiff's subjective complaints, including the objective medical evidence, Plaintiff's work history, and her daily activities.

The ALJ's credibility finding relied in part on the objective medical evidence indicating that Plaintiff was not as limited as she claimed. Tr. 18. He addressed the facts that, despite some reduced sensation in her feet and left lateral thigh, Plaintiff had a normal stance and gait, was able to heel-and-toe walk, had normal gross and fine motor movements, and had no muscle atrophy. Tr. 433. *See Castine v. Astrue*, 334 F. App'x 175, 179 (10th Cir. 2009) (upholding RFC when, *inter alia*, the claimant showed no signs of muscle atrophy or reduced strength). The ALJ also relied on the facts that Plaintiff did not use an assistive device, Tr. 225, 286, 433, and that an EMG study described her peripheral neuropathy as only moderate in severity. Tr. 322-23.

The ALJ's credibility finding was also based, in part, on medical evidence contradicting Plaintiff's claims of disabling limitations. Tr. 19. Plaintiff complained of disabling kidney disease but her own doctor found that her kidney function had been stable since 2007. Plaintiff stated at the hearing that she needed to use the restroom frequently and had occasional accidents, but her treating nephrologist noted that she denied dysuria, urgency, or frequency with urination. Compare Tr. 49-50 with Tr. 351, 393.

9

Plaintiff alleged disabling diabetes, but evidence supports the ALJ's conclusion that Plaintiff's diabetes was well controlled and that Plaintiff was able to discontinue medication for diabetes after losing weight. Tr. 19, 317. Plaintiff reported disabling knee pain, but physical examinations found full strength and only slight tenderness in the joints. Tr. 19, 433. Plaintiff had some reduced range of motion in her knees, but that was not due to pain but to her excess weight. Tr. 433.

The ALJ also relied on Plaintiff's work history and her daily activities in finding her not fully credible. He noted that Plaintiff had a steady work history and that her job had ended in 2010 because the company went out of business and not because Plaintiff was no longer able to do her work. Tr. 18, 39-40. And he found that Plaintiff's daily activities, which included helping care for a sick family member, cooking, cleaning, laundry, shopping, caring for and playing with her pet, and visiting with friends and family, were inconsistent with her claims of disabling limitations. Tr. 19, 219-26, 280-87, 371.

The record also contains Plaintiff's testimony that walking into work at Wal-Mart caused foot pain and exhausted her, and that when she worked as a receptionist she had to have help with her work because of leg and foot pain. But those same facts show that she was able to work despite her pain, not that she was unable to work due to disabling pain. In citing what she contends is contrary evidence, Plaintiff is asking the court to reweigh the

evidence, which it cannot do. *See Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight.").

The court's review of the record convinces it that substantial evidence supports the ALJ's credibility determination and that the correct legal standards were applied. *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) ("[T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible.").

**Vision Limitations**

The ALJ did not include any vision limitations in Plaintiff's RFC. Plaintiff contends she had constant problems with blurred vision, that her cataracts prevented her from watching television, and that she thought she was going blind.

But the medical record does not support a claim of significant vision limitations. Plaintiff's ophthalmologist assessed her vision as 20/25 on the right (OD) and 20/30 on the left (OS) in September of 2009, the year before her alleged onset date. Tr. 417. Four months later, Plaintiff reported blurred vision that had occurred "all of a sudden," which she initially attributed to a change in birth control. Tr. 419. On examination, Plaintiff's vision was 20/100 and 20/80. Tr. 419. Her ophthalmologist wrote Plaintiff's primary care doctor indicating that her slight, early cataract changes did not explain

11

the sudden vision change, and recommending that she be screened for diabetes. Tr. 423; *see also* Tr. 320-21.

By October or 2010, Plaintiff had lost weight, no longer needed to take diabetes medication, and did not report blurred vision to her primary care doctor. Tr. 315. Plaintiff saw a neurologist in November of 2010, but did not complain of any vision problems. Tr. 327, 330. When Plaintiff returned to her ophthalmologist in February of 2011, her vision was back to baseline (20/25 and 20/30). Tr. 420-21. Plaintiff reported that she did not wear glasses and that her vision did not bother her. Tr. 420. Her ophthalmologist assessed diabetic retinopathy, but his treatment advice was simply to use reading glasses and to lose more weight. Tr. 421.

In April of 2011, Plaintiff told her ophthalmologist that she was going blind and had difficulty seeing her phone in sunlight, but her vision was unchanged when tested. Tr. 422. Her ophthalmologist advised her to wear her reading glasses for all close work, including reading her phone. Tr. 422. In May of 2011, Plaintiff submitted a Function Report in connection with her disability claims which reported that her vision blurred "sometimes" when her blood sugar was high, Tr. 283, and that it was "pretty easy" for her to watch TV, Tr. 284. And in June of 2011, Plaintiff had a consultative examination with Dr. Fortune, but did not disclose any vision problems and specifically denied suffering from diabetic retinopathy. Tr. 431-36.

In light of this record, the ALJ's failure to include vision limitations in the RFC was reasonable. Although an ALJ must consider all the evidence, he "is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

**Hypothetical to VE**

Plaintiff contends that the ALJ should have included visual limitations when framing his hypothetical question to the VE. That challenge has been resolved, above. The ALJ need not include in his hypothetical question limitations not supported by the record. The VE's testimony thus constitutes substantial evidence on which the ALJ justifiably relied in reaching his conclusion of non-disability. *See Gay v. Sullivan,* 986 F.2d 1336, 1340–41 (10th Cir. 1993).

Having examined the specific claims of error, the Court finds sufficient evidence that a reasonable mind might accept to support the conclusion of non-disability. The standard of review "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 23rd day of March, 2015, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge